```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   EASTERN DIVISION
```

|  |  |
|---|---|
| BRENDA BERGER,  )<br>)<br>    Plaintiff,  )<br>)<br>v.  )<br>)<br>ANDREW SAUL, COMMISSIONER  )<br>OF SOCIAL SECURITY  )<br>)<br>    Defendant.  )<br>) | No. 20-cv-1039-TMP |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Before the court is plaintiff Brenda Berger's appeal from a final decision denying her application for disability insurance under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 5.) For the reasons below, the Commissioner's decision is AFFIRMED.

## I. FINDINGS OF FACT

Plaintiff Brenda Berger was born on February 1, 1954, and spent her career working as a secretary and a maid for various employers. (R. at 35-36, 160.) She lives with her husband, who assists her with activities in her daily life, such as grocery shopping and various household chores.[1] (R. at 36, 40-42.) For the

---

[1] At her hearing before the Administrative Law Judge ("ALJ"), Berger testified that her husband does the majority of household chores

past several years, she has suffered from severe pain in her back and neck areas and depression.[2] (R. at 36-38, 43.) She was last employed by the Jackson Regional Women's Center, where she worked until February 26, 2017. (R. at 34-35.) According to Berger, the pain in her back and neck became so extreme that she was unable to continue working.[3] (R. at 35.)

Berger applied for disability benefits under Title II of the Act on January 10, 2017, alleging that her disability began on March 1, 2017. (R. at 15.) The Social Security Administration ("SSA") denied Berger's application initially and on reconsideration. (R. at 15.) At Berger's request, a hearing was held before an ALJ on October 3, 2018.[4] On January 2, 2019, the

---

because of her condition but that she does "the light stuff." (R. at 40-42.) She testified that she cannot vacuum or mop and that, when they go out, she has to stand up occasionally to stretch because of the pain in her back and neck. (R. at 41-43.)

[2]According to Berger, on a scale of one to ten, the pain in her back is usually "a five to a six" but that about three times a year her back goes out and her pain reaches "a ten." (R. at 36.) The pain in her neck is usually about "an eight." (R. at 37.)

[3]According to Berger, one of her responsibilities was to push a cart full of supplies to restock rooms and that another was to be on the phone for the majority of the day, both of which exacerbated the pain in her neck and back. (R. at 44.)

[4]Berger and Dana Stroller, a vocational expert, testified at the hearing. (R. at 33-50.) Berger testified about her work experience as a secretary and a maid, as well as how her pain impacts her daily life. (R. at 33-44.) Based on a short series of hypotheticals, Stroller testified that a person with Berger's past work experience and limitations could work as a "housekeeper-hotel," an "office clerk," or a "receptionist-switchboard

ALJ issued a decision denying Berger's request for disability benefits. (R. at 25.) In his decision, the ALJ found that Berger suffered from degenerative disc disease.[5] (R. at 17.) He also noted that recent medical evidence indicated that she suffered from osteoarthritis of the hands and knees, but that because this impairment had not been documented for a period of at least twelve months, this impairment was not severe under the regulations. (R. at 17-18.) At the next step, the ALJ found that Berger did not have an impairment, or combination thereof, that meets or medically equals the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next concluded that Berger had the residual functional capacity ("RFC") "to perform the full range of light work as defined in 20 CFR 404.1567(b)." (R. at 20.) Thus, the ALJ determined that Berger could return to work as a housekeeper at a hotel, an office clerk, or a receptionist-switchboard operator. (R. at 24.) Accordingly, the ALJ concluded that Berger was not

---

operator," though if she increased the restrictions such that the hypothetical individual needed to lie down for at least an hour per day or needed to miss two days a month because of pain, then the individual would not be able to return to work. (R. at 44-49.)

[5]The ALJ also considered Berger's diagnosed depression but found that her depressive disorder did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. at 18.) Because Berger does not appear to contest the ALJ's findings on her mental impairments, the undersigned need not analyze whether his decision with regard to her mental health is supported by substantial evidence.

disabled and was therefore not entitled to disability benefits under Title II of the Act. (R. at 25.) On January 13, 2020, the Appeals Council denied Berger's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1.) Berger filed the instant action on July 14, 2020, seeking review of the ALJ's decision. (ECF No. 1.) In her appeal, Berger argues that the ALJ's RFC determination is not supported by substantial evidence because he applied different standards to, and thus failed to properly weigh, the medical opinions of one-time examining physicians Dr. John Woods and Dr. Donita Keown. (ECF No. 20.) Additionally, Berger argues that the ALJ gave too much weight to the opinions of non-examining state agency physicians. (R. at 20.)

## II.   CONCLUSIONS OF LAW

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v.

Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility

determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v.

Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered.

Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.   Medical Opinion Evidence**

Berger's only argument on appeal is that the ALJ erred in weighing the medical opinion evidence. Berger argues that the ALJ held Dr. Woods and Dr. Keown to different standards and that, had he followed procedures prescribed by the Act, he would have given less weight to the non-examining physician opinions. In making his RFC assessment, the ALJ elected to give Dr. Keown's opinion great weight because "it was based on a comprehensive examination and is well-supported by the largely normal physical examination findings documented, as well as abnormalities identified in diagnostic testing." (R. at 23.) Conversely, the ALJ gave Dr. Woods's opinion little weight because it "was based on a one-time examination" and it "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant as opposed to objective findings." (R. at 24.) The ALJ also reasoned that Dr. Woods's opinion was "not well-supported by the objective imaging studies

- 8 -

of musculoskeletal abnormalities, the claimant's history of treatment, and results of physical examinations from multiple sources in the remainder of the medical record that failed to identify disabling impairment-related functional limitation." (R. at 24.) As for the non-examining physicians, the ALJ gave them significant weight because their findings were consistent with each other and were "not inconsistent with the claimant's history of routine/conservative treatment and abnormalities demonstrated on musculoskeletal imaging studies." (R. at 23-24.)

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a) (3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). The Sixth Circuit has explained that

> [a]n opinion from a treating physician is "accorded the most deference by the SSA" because of the "ongoing treatment relationship" between the patient and the opining physician. A nontreating source, who physically examines the patient "but does not have, or did not have an ongoing treatment relationship with" the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (internal citations omitted)). "ALJs must evaluate

every medical opinion [they] receive by considering several enumerated factors" listed in 20 C.F.R. § 404.1527(c). Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011); see also Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (listing "the examining relationship (or lack thereof), specialization, consistency, and supportability" as factors that an ALJ should consider when weighing non-treating sources) (citing 20 C.F.R. § 404.1527(c)). When an ALJ's decision rejects the opinion of a medical expert who is not a treating physician, the decision "must say enough to allow the appellate court to trace the path of [the ALJ's] reasoning" but need not be "an exhaustive factor-by-factor analysis." Id. (internal citation and quotation omitted).

Although Social Security regulations establish rules about how ALJs must weigh medical opinions, "[t]he Social Security Act instructs that the ALJ — not a physician — ultimately determines a claimant's RFC." Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010). When medical opinions "are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner." Keith v. Colvin, No. 3:14-CV-02261, 2016 WL 1212068, at *5 (M.D. Tenn. Mar. 29, 2016). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." Coldiron, 391 F. App'x at 439.

- 10 -

Rather, it is "precisely the ALJ's role" to evaluate functional limitations in light of the available evidence. Livingston v. Comm'r of Soc. Sec., 776 F. App'x 897, 901 (6th Cir. 2019). "In a battle of the experts, the agency decides who wins." Justice v. Comm'r Soc. Sec. Admin., 515 F. App'x 583, 588 (6th Cir. 2013).

    1.    Dr. Keown and Dr. Woods

Dr. Keown and Dr. Woods each examined Berger one time and Berger did not seek treatment from either physician. (R. at 350-53; 474-84.) Under the Act, both physicians are considered non-treating sources. See Norris, 461 F. App'x at 439; 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). As a result, the ALJ was only required to "say enough to allow a reviewing court to trace the ALJ's reasoning." Jines v. Berryhill, No. 18-1234-TMP, 2019 WL 4644000, at *5 (W.D. Tenn. Sept. 24, 2019) (citing Stacey, 451 F. App'x at 519). This court's role is not to reassess whether a physician opinion should have received more weight; it is merely to determine if the ALJ had substantial evidence to justify her decision. See Walters, 127 F.3d at 528. In the instant case, it is perhaps questionable that the ALJ gave Dr. Keown's opinion great weight while simultaneously criticizing Dr. Woods's opinion for being based on a single examination. Regardless, the ALJ had

substantial evidence to support his decision to weigh Dr. Keown's opinion over Dr. Woods's. Justice v. Comm'r of Soc. Sec., 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins.").

Regarding Dr. Keown's opinion, the ALJ reasoned that it was based on a comprehensive physical examination and her proposed limitations were "well-supported by the largely normal physical examination findings documents." (R. at 23.); see Davis v. Astrue, No. 1:13-cv-1264-cgc, 2016 WL 5957616, at *4 (W.D. Tenn. Oct. 14, 2016) ("As to nontreating sources, the weight accorded to their opinions will 'depend on the degree to which they provide supporting explanations for their opinions.'") (quoting 20 C.F.R. § 416.927(c)(3)). In his decision, the ALJ summarized Dr. Keown's examination of Berger as follows:

> Dr. Donita Keown, MD, . . . observed the claimant had no observable difficulty moving from a seated position to standing. Physical examination was largely benign, with the claimant noted to have full range of motion of the spine, intact sensation and reflexes, negative straight leg raising testing, and an unremarkable gait without the use of any assistive device. Dr. Keown reported the claimant had minimal to no evidence of scoliotic deformity, and no evidence on physical examination of disc herniation with neural impingement or stenosis. While the claimant noted that her hand tired easily, no extremity abnormality was identified on exam and the claimant's strength was graded 5/5 in both hands, arms, and lower extremities.

(R. at 21-22.) In walking through Dr. Keown's opinion and later explaining how he weighed it, the ALJ identified why he was giving great weight to Dr. Keown's opinion; namely because her conclusions

were based on a comprehensive (albeit one time) examination of Berger's physical abilities and consistent with what could be expected from a patient with "largely normal physical examination findings [and the] abnormalities identified on diagnostic testing." See Crum v. Comm'r of Soc. Sec., 660 F. App'x 449, 457 (6th Cir. 2016) (holding that an ALJ does not need to reproduce every fact when explaining why a physician opinion is inconsistent with the record, provided the facts are listed elsewhere in the opinion). In doing so, the ALJ sufficiently addressed the factors delineated in 20 C.F.R. § 404.1527(c) and, thus, did not commit reversible error.

As for Dr. Woods's opinion, the ALJ found that he relied "quite heavily" on Berger's subjective reports of pain and that it was not well-supported by the record. (R. at 24.) Dr. Woods's report states that it is based on: "symptoms of neck and low back pain and pain in bilateral hands and bilateral knees;" "medical record documentation, including cervical and lumbar MRIs of cervical and lumbar DDD;" and "exam findings today . . . consistent with claimant's reported symptoms and diagnoses, including severely decreased cervical ROM and moderately decreased lumbar ROM, and OA changes in hands and crepitus in knees." (R. at 478.) Two of the three reasons he provided as a basis for his proposed limitations rely heavily on Berger's subjective pain. It is not improper for an ALJ to discount a non-treating physician's opinion

where it is based primarily on subjective symptoms. See Staymate v. Comm'r of Soc. Sec., 681 F. App'x 462, 467 (6th Cir. 2017) ("We have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion.") (citing Keeler v. Comm'r of Soc. Sec., 511 F. App'x 472, 473 (6th Cir. 2013)); see also Griffith, 582 F. App'x at 564 ("[T]he ALJ is not required to simply accept the testimony of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."); Bell v. Barnhart, 148 F. App'x 277, 285 (6th Cir. 2005) ("Such [self-reports of symptoms] alone cannot support a finding of impairment.").

Neither is it error for an ALJ to discount a non-treating physician's opinion where it is not well-supported by the record. See Gayheart, 710 F.3d at 376 ("Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion.") (quoting 20 C.F.R. § 404.1527(c)(6)). Dr. Woods himself summarized the findings from Berger's previous cervical and lumbar MRIs as showing "mild" ailments.[6] (R. at 475.) In this case, the ALJ analyzed Berger's

---

[6]In the section of his opinion titled "Past Medical History," Dr. Woods noted that the 2013 lumbar MRI showed "evidence of mild diffuse lumbar degenerative disc disease and mild levoscoliosis,"

history of conservative medical treatment along with findings from her objective imaging studies and other physical examinations, ultimately finding that nothing else in the record comported with Dr. Woods's proposed severe limitations.[7] See, e.g., Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625 (6th Cir. 2016) ("The ALJ noted that the records indicate Kepke received only conservative treatment for her ailments, a fact which constitutes a 'good reason' for discounting a treating source opinion."); Risner v. Berryhill, No. 18-cv-01008-TMP, 2019 WL 1421766, at *4 (W.D. Tenn. Mar. 29, 2019) ("The court finds that the ALJ gave good reasons to give no weight to the opinion of Dr. Schwartz, as the opinion was inconsistent with the clinical findings from Risner's examinations, her conservative treatment, and her daily activities."). These are permissible reasons to give a non-treating physician opinion little weight, and as such the ALJ did

---

while the 2015 cervical MRI showed "mild diffuse cervical degenerative disc disease with mild canal stenosis." (R. at 475.)

[7] Dr. Woods appears to be referring to several MRIs and X-Rays taken between 2013 and 2015. (R. at 325-31.) Together, these images evidence that Berger suffers from mild scoliosis and degenerative disc disease in her lumbar spine. (R. at 325-31.) Both Dr. Soldo and Dr. James considered these studies in reaching their conclusions that, though her impairment exists and is limiting, Berger's degenerative disc disease is not severe enough to make returning to work in a limited capacity impractical. (R. at 60, 78.) Though Dr. Keown does not refer to any of the diagnostic images in the record, she does opine that Berger suffers from "[c]ervical spine degenerative disease" and "[l]umbar degenerative change." (R. at 352.)

not commit reversible error in weighing the two conflicting non-treating physicians' opinions. See Stewart v. Comm'r of Soc. Sec., 811 F. App'x 349, 355 (6th Cir. 2020) (holding that it is insufficient for a claimant to merely cite evidence that conflicts the ALJ's decision because "it is the administrative law judge's task to resolve this conflicting evidence").

2. Dr. Soldo and Dr. James

Berger also argues that the ALJ erred by giving too much weight to the opinions of two non-examining state physicians, Dr. Catherine Soldo and Dr. Aldon James. "Generally, an ALJ may rely on a state agency consultant's medical opinion in the same manner that she may rely on other physician opinions." Cogswell ex rel. Cogswell v. Comm'r of Soc. Sec., No. 3:16-cv-2030, 2018 WL 3215721, at *2 (N.D. Ohio July 2, 2018). "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 274 (6th Cir. 2015); see also McGrew v. Comm'r of Soc. Sec., 343 F. App'x 26, 32 (6th Cir. 2009) (agency regulations allow a consulting physician opinion that is based only on "a cursory review of her then existing medical records" to be considered "as opinion evidence, except for the ultimate determination about whether you are disabled.") (quoting 20 C.F.R. § 404.1527(f)(2)(i)); Hoskins v. Comm'r of Soc. Sec., 106 F. App'x 412, 415 (6th Cir. 2004) ("State

agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). Here, the ALJ gave substantial weight to Dr. Soldo's and Dr. James's opinions because they were consistent with each other, with Dr. Keown's opinion, with Berger's history of conservative treatment, and with the diagnostic imaging studies in the record. Indeed, both Dr. Soldo and Dr. James found that although Berger suffers from medically determinable impairments that could reasonably cause her pain and other alleged symptoms, based on the record she could return to work with some exertional limitations. This court has found that, "[i]n the face of conflicting medical opinion evidence, both familiarity with longitudinal evidence and consistency with the record are appropriate reasons to give great weight to a particular medical opinion." Blythe v. Berryhill, No. 18-1028-TMP, 2019 WL 4277000, at *6 (W.D. Tenn. Sept. 10, 2019) (citing Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009)). The two state agency consulting physicians had the benefit of a complete record and, independently, came to similar conclusions. The court finds that the ALJ did not commit reversible error in affording significant weight to Dr. Soldo's and Dr. James's opinions.

### III. CONCLUSION

As discussed above, the ALJ did not err in how he weighed the various physician opinions and thus his decision is supported by substantial evidence. The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 12, 2021
Date